THE STATE OF MARYLAND *vs.* JOSEPH M. HAWKINS.

*Trading Stamps—Gift Enterprise—Lottery—Police Power.*

The Act of 1898, ch. 207, prohibits the giving of a trading stamp or check by sellers of goods to the purchasers thereof which stamp may be presented to other parties than the seller and entitles the holder to receive therefor any gift or anything uncertain or unknown to the purchaser or the goods at the time of the purchase.    Upon demurrer to an indictment for violation of the statute, *held*,

1st. That since the transaction prohibited by the statute is in the nature of a lottery, the statute is a constitutional exercise of the police power.

2nd. That if the stamp entitles the holder to something which is uncer-

tain and unknown at the time of the purchase, it matters not whether the seller of the goods or some other person redeem it.

3rd. That in so far as the statute prohibits the giving of a stamp to be redeemed at a place other than that where the sale is made, it is invalid, provided no element of chance is involved.

Appeal from the Criminal Court of Baltimore (HARLAN, C. J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Isidor Rayner, Attorney-General,* for the appellant.

*First.* The scheme is in the nature of a lottery because the article for which the stamp is to be redeemed is uncertain, undetermined and unknown to the recipient of the trading stamp at the time that he makes the purchase of merchandise, the inducement to which purchase, is the receipt of the trading stamp. This uncertainty is further emphasized by the fact, as is admitted, that a single stamp, or a single number of stamps, are not redeemable at the will of the purchaser of the merchandise, but that the said stamps are only redeemable when brought to the person issuing the same in certain quantities ; and hence the purchaser of merchandise in small quantities has no right to have his stamps redeemed. The individual or company that issue the trading stamps do not obligate themselves to have any specific articles on hand at any time for the purpose of redeeming the stamps. A person intending to deal with a merchant who uses these trading stamps might observe at the time of his purchase, in the store where the stamps are redeemed, a certain line of goods or articles which, when the time of redemption arrives, might all be gone and disposed of. In other words, the trading stamp is simply an assurance that something will be given as a prize or gratuity, with no pledge to the holder that he will receive any specific article that he may have desired, because all of those articles may be awarded to those who, having accumulated a sufficient number of stamps, reach the store in the first instance in advance of the particular purchaser in question.

The offense need not be a violation of the lottery or gambling laws of the State.  If that was required it would not have been necessary to enact the statute.  If it is in the nature of lottery or gambling the Legislature had a perfect right to declare it to be lottery or gambling.  It is absolutely so because the person who purchases the goods is paying the consideration in order to obtain a prize *unknown, uncertain* and *undetermined.*  He is taking a chance of getting some sort of a prize, the selection of which depends upon the choice or arbitrary will of the person or company who is to supply it.  The storekeeper says to him, if you buy so many goods I will give you so many stamps, these stamps are worthless if you only buy a certain quantity, but if you reach the limit, your stamps become redeemable, and you will get such a prize as the person issuing the stamps choses to award you out of a certain class of goods constantly changing.  The Legislature says that it is in the nature of a lottery, and it is difficult to understand upon what ground the Court can judicially declare that the Legislature had no right to say that.  *Dunn* v. *People,* 40 Illinois, 465; *Horner* v. *U. S.,* 147 U. S. 449; *Taylor* v. *Smetten,* 11 Q. B. D. 207.

*Second.  The scheme is in restraint of trade.*  The schemes and devices referred to in the law give an unlawful advantage to the merchant who avails himself of them, and are in restraint of the trade of all other merchants who do not choose to enter into them.  The merchants, especially in a small community, who desire to conduct their business in accordance with the usual methods of fair and honest dealing, are bound to lose their custom and trade if these practices are permitted.  They may not want to indulge in schemes which have all the insignia and incidents of a lottery, and their refusal to do so devolves upon them great loss and injury in the pursuit of their business.  An honorable merchant would feel some degree of responsibility if these trading stamps turned out to be fictitious or valueless in the hands of his customers ; he does not redeem them himself, as was done in *Long's case,* 74 Md. 565; but they are redeemed by other persons who are strangers to

the customers to whom the goods were sold. Why should not the Legislature have the power to protect the merchant who conducts his business legitimately, and to provide that any schemes and devices which are accompanied with the giving of prizes gratuities shall not be allowed to interfere with him, or drive him out of business? The practical operation and result of these schemes is in restraint of legitimate trade generally, and there is no reason why the Legislature, acting for the interests of the mercantile community, should not have the right to so declare.

· *Third. The statute is a police regulation and prevents fraud and deception in business dealings.* It will be noticed that the individuals or associations using these trading stamps are not merchants or dealers in goods, wares or merchandise, in the proper sense of the word. Their business is simply to redeem the trading stamps that they have issued to the merchants, in the hands of their customers. Their stores, or places of redemption, are simply open for the purpose of awarding prizes to the holders of the stamps.

In matters of this nature the discretion of the Legislature is very large, and every fair presumption is to be indulged in favor of the power as exercised. It is only therefore in a case where the statute purporting to have been enacted for the protection of the public health, safety, peace and morals, has no real or substantial relation to these objects, or is a palpable invasion of the rights secured by the fundamental law that the Constitution declares it void. The Courts have gone further than this and held : " If a statute good on its face may, by reason of its general terms be made by construction to apply to objects forbidden by the Constitution, the statute will be allowed its full force and operation as applicable to all cases constitutionally within its provisions." *Chapman* v. *U. S.* 5 Appeal Cases, District of Columbia, 131; *Powell* v. *Pennsylvania,* 127 U. S. 678; *State* v. *Broadbelt,* 89 Md. 565 (fully discussing the police power of the State) ; *Mugler* v. *Kansas,* 123 U. S. 623, 661; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Supervisors* v. *Stanley,* 105 U. S. 305; *Virginia Coupon cases,* 114

U. S. 295. The very points involved in this case and under this law have been discussed and carefully passed upon by the Appellate Court of the District of Columbia. *Landsburg* v. *The District of Columbia*, 11 Appeals, D. C. 512 (1898) ; See also *Dalton* v. *State*, 22 R. I. 77.

*W. Benton Crisp* (with whom was *Alexander H. Robertson* on the brief), for the appellee.

1. The Act of Assembly upon which the indictment in this cause is based, undertaking as it does to prohibit the use of any scheme or device as an inducement for the sale, barter or trade of goods, wares and merchandise, whether it involves the element of chance or not, is so general in its terms that it is invalid. *Long* v. *State of Maryland*, 74 Md. 565.

2. The transactions of the defendant as alleged in the indictment are not open to the objection that they constitute a lottery, or are in the nature of a lottery or game of chance, and for that reason subject to legislative prohibition or control. *State* v. *Dalton*, 22 R. I. 77; *Commonwealth* v. *Sisson*, 178 Mass. 578; *People* v. *Gillson*, 109 N. Y. 389; *Long* v. *State of Md.*, 74 Md. 565; *Yellowstone* v. *State*, 88 Ala. 196; *Commonwealth* v. *Emerson*, 165 Mass. 146.

Lottery has been variously defined, but perhaps the best and most comprehensive definitions of it are to be found in the following extracts : "A lottery is a scheme for the distribution of prizes by chance." (*Governor* v. *Art Union*, 7 N. Y. 228.)

"It is a scheme by which a result is reached by some action or means taken in which result man's choice or will has no part and which human reason, foresight, sagacity or design cannot enable him to know or determine until the same has accomplished." (2 *Bouvier*, 281; *People* v. *Elliott*, 74 Mich. 264.)

It "embraces the elements of procuring, through lot or chance, by investment of a sum of money or something of value, some greater amount of money or thing of greater value." (*U. S.* v. *Wallace*, 58 Fed. Rep. 942.)

"A scheme by which on one's paying money or some other

thing of value he obtains the contingent right to have some-
thing of a greater value, if an appeal to chance by lot or other-
wise under the direction of the manager of the scheme should
decide in his favor." (*Bishop's Stat. Crimes*, sec. 952; 2 *Bou-
vier's Law Dictionary*, 281.)

Analyzing these definitions, we find that there are several
elements necessary to constitute a lottery. First : There
must be the purchase of a right. Second : The right must be
a contingent one to receive something greater than that which
is purchased. Third : The contingent right must depend
upon a lot or chance. We submit that none of these elements
was present in the transactions between the defendant and his
customer, as alleged in the indictment.

(a) *The customer of the defendant did not purchase the stamp.*

If any one thing in the indictment is clear, it is that the de-
fendant's customer, Gregory, did not purchase the stamp re-
ferred to therein. It is true, it is alleged in the indictment,
that the defendant "unlawfully did use, hold for use and sell"
the stamp aforesaid. But this merely pleads the statute and
states a conclusion. Unless the facts alleged support the con-
clusion this allegation must give way to that, which by fair in-
ference and proper interpretation appears to have been the
real transaction between the parties. We submit that the fair
inference to be drawn from the pleading, and the true interpre-
tation thereof shows that the stamp was not sold, but was a
gratuity pure and simple. Gregory paid nothing for it, or if
he did, the consideration therefor certainly does not appear.

It was *given* to him as *an inducement* to purchase merchan-
dise. The indictment alleges that the stamp was a "scheme
and device for the sale, barter and trade of goods, wares and
merchandise, holding out as an *inducement* for such sale, bar-
ter and trade the *giving* and issuing of such stamp."

The subsequent portion of the indictment also shows, be-
yond peradventure we think, that the stamp was not sold, but
was given as a mere token, which entitled the holder to ex-
change it for a gift, prize, gratuity, etc. For it is alleged that
Gregory had the right to have the same redeemed by "*getting
and receiving in exchange therefor a gift, prize, gratuity, etc.*"

The conclusion is, irresistible, that if the stamp was sold the thing which was to be given in exchange for it could in no sense be a gift or gratuity. The converse of the proposition is likewise true, that if the thing received in exchange for the stamp is a gift or gratuity, it follows that the stamp could not have been sold.

If the stamp was sold, how can it be said that it was *given* as an *inducement for the sale of merchandise ?* If it was *given* as *an inducement for the sale of merchandise,* how can it be claimed that it was sold ? To contend that the stamp was sold to Gregory as an inducement to him to purchase merchandise is to state an unreasonable proposition ; while to say that the stamp was *given to him* as an *inducement to purchase merchandise* is to state something which is entirely reasonable and in keeping with a fair interpretation of the language employed in the indictment. The theory of a sale is entirely incompatible with the theory of a gift, and if the statute was enacted for any purpose at all it was to prevent the *giving* of one thing *as the inducement* for the sale of another.

So that we respectfully submit the entire transaction, as alleged in the indictment, precludes the idea that the stamp was sold, while on the other hand the only fair construction which can be placed upon the pleading is that it alleges the gift of the stamp as an inducement for the sale of merchandise.

(b) *The right to have the stamp redeemed depended and depends upon no contingency whatsoever.*

(c) *There is nothing in the transactions referred to in the indictment which involves an element of chance or lot.* It is nowhere shown in the indictment that in giving or redeeming the stamps, or in any other manner the transaction referred to involved an element of chance or lot. In other words, it is not alleged, nor can it be reasonably inferred, that in receiving the stamp or in redeeming the same Gregory was obliged to submit to anything in the nature of a drawing by lot or any other chance for the purpose of determining whether he would receive something or nothing in exchange for his stamp. The stamp was given him without any such ceremony, and in re-

deeming it he was required merely to present it for redemption, and he would receive in exchange therefor the gift, prize, gratuity, &c. In short, the transaction was totally lacking in any element of chance, and in no sense appealed to the so-called gambling instinct.

It is the constitutional right of a person to give as an inducement for a sale of merchandise a commodity of no value, or practically no value, as, for example, a card, picture, or stamp, *a fortiori* it is his right to give a card, picture or stamp which may be exchanged for a gift, gratuity, or other thing having presumptively some value. It must be assumed, for the purposes of this case, that these gifts have some value and are made in good faith, because it is nowhere alleged that they have no value, and are given in bad faith. Bad faith will never be presumed; it must be alleged and proven.

It was the defendant's constitutional privilege to sell the merchandise. It was also within his privilege to give a commodity or a gratuity of any kind as an inducement for the sale. *State* v. *Long, supra; People* v. *Gillson, supra; Yellowstone* v. *State, supra; State* v. *Dalton, supra.* Nor can it make any difference that the commodity in this instance was a stamp, for if the defendant had the constitutional right to give a commodity of any kind, he had the right to give a blue slip, as was done in *Long* v. *State*, or a stamp, as in *State* v. *Dalton, supra.*

3. The transactions alleged in the indictment are not of such a character as to interfere with the public health, public safety, or public morals, and are not, therefore, within the police power of the State to regulate or control. Cases last above cited.

4. The Act under which this defendant was indicted, in so far as it prohibits the transactions of the defendant as alleged in the indictment, is subversive of the rights guaranteed to him by the Federal Constitution and the Declaration of Rights of this State and is therefore unconstitutional and void. *Powell* v. *Penn.*, 127 U. S. 678; *Allgeyer* v. *Louisiana*, 165 U. S. 578; *People* v. *Marks*, 99 N. Y. 377; *Matter of Jacobs*, 96 N.

Y. 98; *Eaton* v. *The Railroad*, 51 N. H. 504; *People* v. *Gillson*, 109 N. Y. 389; *State* v. *Long*, 74 Md. 565; *State* v. *Dalton*, 22 R. I. 77; *Commonwealth* v. *Sisson*, 178 Mass. 578.

5. The Act under which this defendant is being prosecuted is unconstitutional, in that it deprives him of the equal protection of the law. *Yick Wo* v. *Hopkins*, 118 U. S. 336; *People* v. *Gillson, supra ; State* v. *Broadbelt*, 89 Md. 579–581; *Gulf, &c.,* v. *Ellis*, 165 U. S. 150.

It gives to one of its citizens—a manufacturer—the right to make a gift or present in any manner whatsoever to any purchaser of his products, while it denies to another of its citizens the right to do so. It gives to a merchant the right to make a gift to his customer provided he does so personally, while it denies to another merchant the right to make a sale of his products and to accompany it with a ticket, stamp or order entitling his customer to receive from a third person a gift or gratuity for which the merchant has contracted. It gives to one of its citizens the right to make a gift provided he does so at the place where he sells his goods, but it denies to another the privilege of making a gift or gratuity through a third person at any other place than where the merchandise is sold. The Act, we therefore contend, is unequal in its operation and purpose because it does not give to all classes of merchants the same protection and rights under the law. It is class legislation in its very worst form.

Boyd, J., delivered the opinion of the Court.

The Criminal Court of Baltimore City sustained a demurrer and quashed an indictment againt the appellee for an alleged violation of the Act of 1898, ch. 207, known as secs. 263A, 263B and 263C, of Art. 27 of the Code of Public General Laws. From that judgment the State appealed and the question before us is whether that is a valid law—the Court below having determined that it was not.

There are three counts in the indictment and a demurrer to each one was sustained. The first charges that the traverser " unlawfully did use, hold for use and sell to one, Walter J.

Gregory, a certain stamp, commonly called a trading stamp, and a certain ticket and check " which was a scheme and device for the sale, etc., of certain goods, wares and merchandise, holding out as an inducement for such sale, etc., the giving and issuing of such stamp, ticket and check which was to be and might have been presented to and redeemed by some person and association of persons other than the traverser, the holder " getting and receiving in exchange therefor a certain gift, prize, gratuity and divers other things uncertain, undetermined and unknown to him, the said Walter J. Gregory, the said purchaser of said goods, wares and merchandise at the time of the purchase thereof."

That count is for the violation of sec. 263A, and follows very closely the language of that section. The second and third are based on section 263B—intending to embrace the two methods of redemption of the stamps therein prohibited, namely, " at any other place than that where said sale, barter or trade was made, or in any other manner than by something certain and known to the purchaser at the time of said sale, barter or purchase." At the argument and in the briefs of counsel a good deal was said about the methods adopted by those dealing in trading stamps, but in our consideration of the case we are confined to the allegations in the indictment, so far as the facts are concerned, and as the three counts substantially follow the language of the statute and embrace all of the acts therein prohibited, we are to determine whether they, or any of them, charge the traverser with doing what the Legislature had the power to prohibit. The case of *Long* v. *State*, 74 Md. 565, established as the law of this State that a statute prohibiting *all* gifts to purchasers of goods, wares or merchandise, as inducements to make the purchases, was invalid, and could not be enforced, in so far as it related to gift enterprises not involving chance. The Court said "Such a regulation of trade is, in our opinion, not only unwise but unlawful, and unlawful because it is necessary neither for the health, safety nor welfare of the people, and which in its operation would be oppressive and burdensome." But the language of the statute

then under consideration differs materially from the one now before us and the concluding paragraph of that opinion shows that this Court recognized the distinction contended for by the Attorney-General in this case. It says " It follows that the Act of 1886, ch. 480, by reason of its general terms, including as it does all gift enterprises, those involving the element of chance, as well as those that do not, is invalid so far as it relates to gift enterprises not involving chance." The Court had previously stated that " In so far as the object of an Act is to protect the morals and advance the welfare of the people by prohibiting every scheme and device bearing any semblance to lottery or gambling, it undoubtedly would be a valid exercise of power, and the citation of authorities is not necessary to sustain a proposition so well settled." The Act of 1886 prohibited " holding out as an inducement for any such barter, sale or trade, or the offer of the same, *any scheme or device by way of gift enterprises of any kind or character whatsoever*," and the Court said that that broad language not only included "a lottery in which a valuable consideration is given for the chance to win a prize, but also a gratuitous distribution not involving the element of chance." The statute was only held to be invalid so far as it related to the latter.

But section 263A of the Act of 1898 is not thus broad and comprehensive in its terms. It only condemns the giving or issuing of a stamp (we can omit the other things mentioned) to be presented to some person or association of persons other than the vendor of the goods sold, which entitles the holder to get or receive in exchange therefor "any gift, prize or gratuity, or anything *uncertain, undetermined* or *unknown* to the purchaser of said goods, wares or merchandise at the time of the purchase thereof." If the vendor holds out as an inducement to purchase his goods, wares and merchandise the giving of a stamp which will thus entitle the purchaser to something which is *uncertain, undetermined* and *unknown* to him at the time of the purchaser, the transaction is certainly one bearing some "semblance to lottery or gambling"—"involving the element of chance." Although the facts relied on to hold the appellee

guilty are not before us, excepting in so far as they are to be found in the indictment, we cannot decline to consider such things as are of common knowledge to all persons acquainted with business dealings, and we must assume that neither a merchant nor trading stamp company would intentionally engage in a business by which loss must necessarily be sustained.   If the merchant only received the actual value of the goods sold, he could not very long continue the practice of having a third party furnish some other article at his expense, and unless the third party in some way gets value for the articles delivered by him, his business career would ordinarily be shortlived.   And it would seem to be equally clear that if purchasers from the merchant always paid full value for the goods purchased and for the article obtained from a trading stamp company, there would be but little inducement for them to make purchases in that way.   But when they are led to believe that they have the chance of getting something in addition to their purchases, and especially when they do not know what it is to be, then it is unfortunately true that there are very many persons who would be thereby induced to make purchases who would not otherwise do so.   The "uncertain, undetermined or unknown" is what attracts a large class of people in every community and it is dealing with the "uncertain, undetermined or unknown" that has ruined many and the tendency to thus deal (appealing to the gambling instinct) is one of the evils of the present day.   Lotteries, which were at one time expressly authorized by law, are now generally prohibited throughout this country—there are provisions against them in the constitutions of many States, including our own.   Numerous statutes have been passed to prevent transactions which, while not technical lotteries, are so akin to them that they have some of the same evil results, and when a statute is before a Court for construction which apparently seeks to correct such evils, it should not be too ready to declare it invalid but on the contrary should sustain it, unless it clearly violates some rights guaranteed to those affected by it.   If the inducement for the sale was a stamp which would enable

the holder to get something which was uncertain, undetermined and unknown to him at the time of the purchase, it would seem to be clear that the transaction involved the element of chance referred to in *Long* v. *State*, and therefore not only cannot be justified by that decision, but is, by implication at least, condemned by it.

Nor do we find in the other cases relied on by the appellee any authority for declaring a statute such as this invalid, on constitutional grounds. The one before the Court in *People* v. *Gillson,* 109 N. Y. 389, was of the same character as our Act of 1886 above referred to. In *State* v. *Dalton,* 46 Atl. Rep. 234; s. c., 22 R. I. 77, the Supreme Court of Rhode Island was construing a statute which did not have such a provision in it as the one now being considered (section 263A.) Although the Court held the Act before it to be unconstitutional and void, in disposing of the case it said: "As to the argument before referred to, that the scheme is in the nature of a lottery because the precise nature and value of the premium are unknown to the purchaser, it is enough to reply that nothing appears in the Act or in the record before us to show this ;" and again it was there said: "If the Act had prohibited the giving away of any stamp or device in connection with the sale of an article, which would entitle the holder to receive, either directly from the vendor, or indirectly through another person, *some indefinite and undescribed article, the nature and value of which were unknown to the purchaser, there would then be introduced into the prohibited transaction enough of the element of uncertainty and chance to condemn it as being in the nature of a lottery."* It would be difficult to find an authority more applicable to the language used in our statute than that just quoted, especially the part italicized by us.

In *Commonwealth* v. *Emerson,* 165 Mass. 146, the Court said in reference to the statute before it that it was not intended to prevent the sale of two things at once: "But the aim of this statute is to prevent offers of bargains which appeal to the gambling instinct, and induce people to buy what they do not want by the promise of a gift or prize, the precise nature

of which is not known at the moment of making the purchase. There was nothing of the sort in the present case." And in *Commonwealth* v. *Sisson*, 60 N. E. Rep. 385; s. c. 178 Mass. 578, (decided by the Supreme Court of Massachusetts in May, 1901), the Court said it is presumed that when the Act then under consideration was passed, the Legislature had before it the decision in *Commonwealth* v. *Emerson*, and after referring to what we have quoted from that case said : "When then it is enacted by the latter statute that the provisions of the one last mentioned should apply to the giving of a stamp, or coupon, entitling the purchaser to other property from other persons, the same limitations to the generality of the words used must be understood." Nor is there anything in the case of *Yellow-Stone Kit* v. *State*, 88 Ala. 196, opposed to the conclusion we have reached, as the statute there does not have such a provision as the one we are considering.

The case of *Lansburgh* v. *District of Columbia*, 11 App. D. C. 512, went further than we are required to do to uphold the validity of this statute, and sustained one which was not so clearly directed against transactions involving the element of chance as our Act of 1898.

The second count relies on the allegations that the stamp was to be redeemed by the traverser "at a certain place other than that where said sale, barter and trade was made." The mere fact that it was to be so redeemed does not introduce into the transaction such an element of chance as would distinguish it from *Long* v. *State*. We therefore are of the opinion that the demurrer to that count was properly sustained.

What we have said of the first is applicable to the third count. It charges that the stamp was to be redeemed by the traverser "in other manner than by something certain and known to the said purchaser, the said Walter J. Gregory, at the time of said sale, barter and purchase." Whether or not the stamp is to be redeemed by the party selling the goods, wares or merchandise, or by a third party, is not of itself material. At the trial of a case under this statute it may be a circumstance proper to be proven as reflecting upon the un-

certainty of the article to be received by the holder of the stamp, but the mere fact that it is to be redeemed by a third person would not necessarily change the nature of the transaction. If the stamp entitles the holder to something which is uncertain and unknown at the time of the purchase, it matters not whether the vendor of the goods, wares and merchandise, or some other person, redeem it. It is then so far of the nature of a lottery, or gambling transaction, as to bring it within the power of the Legislature to prohibit it.

We have not thought it necessary to enter into a discussion of the police power of the State, as that has been so frequently considered by this and other Courts and in one of the recent cases before us, involving that question, it is fully and ably discussed by the Chief Judge. *State* v. *Broadbelt*, 89 Md. 565. Without further prolonging this opinion by referring to other questions so ably presented by the counsel, we think the first and third counts of this indictment are sufficient and that the statute is valid, excepting in so far as it undertakes to make it a criminal offense merely to have the stamp or other article mentioned redeemed "at any other place than where such sale, barter or trade was made." The demurrer to the first and third counts should have been overruled, and that to the second sustained. For error in sustaining the demurrer to the first and third counts the judgment will be reversed.

*Judgment reversed, the appellee to pay the costs, and new trial ordered.*

(Decided April 1st, 1902.)