STATE ex rel. GEORGE T. SIMPSON v. SPERRY & HUTCHINSON COMPANY.[1]

April 15, 1910.

Nos. 16,345—(35).

**Trading Stamp Act Constitutional — Respondent not Within Its Terms.**
Chapter 142, Laws 1909, declares that any contract or arrangement between two parties, by which one of them shall issue and redeem trading stamps, or tickets, which are given in connection with the sale of merchandise by the other, shall constitute a gift enterprise, unless the articles promised to be given as such gift or premium shall be definitely described on the stamp or ticket, and the character and value of the articles are made known to the purchaser of the merchandise at the time of the purchase,

[1]Reported in 126 N. W. 120.

[Note] Forbidding use of trading stamps, see note to Ex parte Drexel (Cal.) 2 L.R.A.(N.S.) 588.

and unless the right of the holder of such stamp or ticket, to the gift or article so promised for its redemption, becomes absolute upon the completion of the delivery thereof, without the holder being required to collect any specific number of similar stamps or tickets and present them collectively for redemption, and unless the right of the holder of such stamp or ticket to the prize or gift so offered is absolute, and does not depend on any chance, uncertainty, or contingency whatever. *Held:*

1. The act is a constitutional exercise of the police power, in so far as it prohibits the issuing of trading stamps or tickets to be redeemed in articles of merchandise in any manner which depends upon any chance, uncertainty, or contingency.

2. The issuing and redemption of trading stamps, as carried on by respondent company, is not attended with such elements of chance, uncertainty, and contingency as to justify the restrictions imposed by the act. The enforcement of those conditions against the company would operate, not as a reasonable regulation of its business, but practically as an absolute prohibition thereof.

Petition to the supreme court for a writ of quo warranto directed to the Sperry & Hutchinson Company, a corporation, requiring it to show cause by what right it transacted business in the state of Minnesota. The petition, among other matters, set out the form of so-called advertising contract used by respondent company with its subscribers, the conditions under which it furnished them with "S. & H. green trading stamps," the printed directions and conditions relative to the issue, collection and redemption of the trading stamps, and the following notice printed on the back cover of its trading stamp books:

"Notice. To the Public and to the Customers of our Subscribers. This book and the trading stamps which are issued by the undersigned are so issued, and are received by you, pursuant to certain restrictions and limitations concerning their use contained in the written contracts made for your benefit between the undersigned and the merchants authorized to reissue them to their customers. Neither the books nor the stamps are sold to you or the merchant, the title thereto being expressly reserved in the undersigned. They are furnished to you as evidence of payments to our subscribers. The only right which you acquire in said stamps is to paste them in books

like this and present them to us for redemption. You must not dispose of them, or make any other use of them without our consent in writing. We will in every case, where application is made to the undersigned, give you permission to turn over your stamps to any other bona fide collector of 'S. & H.' Green Trading Stamps, but, if the stamps of the book are transferred without our consent, we reserve the right to restrain their use by, or take them from, other parties. It is to your interest that you fill the book, and personally derive the benefits and advantage of exchanging it for your choice of the many useful and valuable articles supplied by us.

"These stamps when received by you must be pasted in the book, as that is a method we have adopted for the purpose of preventing their further use as an advertising medium. Our stamps and premiums are restricted, except as above, to our subscribers and their customers. The Sperry & Hutchinson Company." * * * "This book is loaned to

Name ——————————— Address ———————————"

The petition further alleged that the business of respondent was conducted in open and intentional violation of chapter 142, Laws 1909, and that respondent conducted a gift enterprise and trade practice which is prohibited by said act. That the only change in the conduct of its business by respondent after the enactment of said chapter was to add to the face of its trading stamps the words "One pen Minnesota value one mill."

The respondent demurred to the petition and writ on the ground that the facts stated in the petition did not constitute a cause of action; and more specifically for the reason that the statute named abridges the immunities of citizens of the United States and of the respondent and attempts to deprive persons and citizens of the United States of liberty or property without due process of law and denies to respondent the equal protection of the laws guaranteed to citizens by both the state and federal constitution.

*George T. Simpson,* Attorney **General, and *Young & Stone,*** for petitioner.

The statute applies only to stamps or tokens not redeemable by the

seller of the goods, but which purport to be redeemable by some one else. Where stamps redeemable by the issuer are given with the sale of property, they constitute a part of the contract of sale and rest for their validity on the consideration for the sale. Where stamps are issued in connection with the sale of property purporting to be the obligation of some one other than the seller of the property, there is no contractual relation between the buyer and the stamp redemptioner. As between the holder and the redemptioner, the stamp is not even a nudum pactum. There is not even a promise of any kind. Notwithstanding its sham character, however, the trading stamp company pretends that it represents its own obligation to redeem the stamp in some article of value. It is highly important that this pretense on the part of the trading stamp company should be made an enforceable obligation, and that is the obvious purpose of this law.

The Sperry & Hutchinson scheme contains elements of "chance, uncertainty or contingency" which, on that ground alone, make it a proper subject of regulation. State v. Hawkins, 95 Md. 133. In the scheme described in the petition and writ, there is an opportunity for swindling which was not present, or at least not commented upon, in the Hawkins case, and that is the absence of any agreement on the part of the respondent with the merchant or his customers to redeem its stamps in any articles of value. The respondent, therefore, is at liberty to redeem 990 stamps in merchandise of the value of one cent or less. So far as its legal obligation is concerned, it may disappoint the collector, who expects for his 990 stamps a piece of household furniture of substantial value, by giving him a stick of gum or a piece of laundry soap. The obligation imposed upon the respondent by the contracts prepared by itself is so negligible that the contract, if questioned in the courts, should be held unilateral, or, if not unilateral, void for uncertainty. Lansburgh v. District of Columbia, 2 App. Cas. (D. C.) 512.

Respondent's business entitles it to the name of "tontine," a name which has been banished from life insurance by legislative prohibition. It applies to any plan of collecting money or any other thing of value from the many and distributing it among a few who, by reason of good fortune, diligence, and greater endurance than their

fellows, have been able to hold out to the end and until the time for distribution. That is the case with the S. & H. trading stamps, the benefit of which, if there be any benefit, is conferred upon the fortunate few who collect enough stamps to fill one or more of the books furnished by respondent. The courts say, and it is obvious, that herein lie the main contingency and chance which confront the purchaser, and also the profit which the company makes from the failure of the purchaser to stay by the game until the happening of the contingency.

Irrespective of the element of chance and uncertainty, the trading stamp business is subject to regulation of the kind provided for by this statute. Gundling v. Chicago, 177 U. S. 183; Knoxville Iron Co. v. Harbison, 183 U. S. 13. On account of their deceptive character, their utter uselessness and their tendency to cause disturbance in the mercantile trade of any community, trading stamps are subject to proper regulation. Certainly regulation, the only purpose of which is to enforce absolute honesty and to eliminate all elements of chance and uncertainty, cannot be termed improper. McLean v. State of Arkansas, 211 U. S. 539.

It is the 990th stamp that vitalizes the 989 stamps previously accumulated, and when that last stamp is pasted into the magic book the right of the stamp gatherer supposedly becomes vested. But what is he entitled to? He presents his book at the trading stamp parlor of the respondent, if it can be found, and there he is supposed to find a collection of bric-a-brac and other merchandise, each article of which is exchangeable for one or more books of trading stamps. If the trading stamp holder should not be satisfied with what is offered him as a prize, what is his remedy? If, perchance, by reason of large purchases and diligent collection of stamps he should have so many books as to consider himself entitled to a piano, what recourse would he have if the trading stamp company offered him a kitchen chair? Could he go into court and recover anything on his numerous books of stamps? Where and what is the contract obligation which he could enforce against the company? Or, if deeming the retailer from whom he has made his purchases the party immediately responsible and to whom he should complain, what recourse

would the latter have against the trading stamp company? The only promise that is contained in its contract with the merchants is to redeem the stamps in articles of merchandise or according to law. A more meaningless and empty combination of words could not be used in fixing a contract obligation.

*Morton Barrows* and *John Hall Jones,* for respondent.

The statute is unconstitutional in that its title bears no proper relation to the subject matter. The title of the act is an act to define gift enterprises and to provide a penalty for carrying on the same. The body of the act shows that the statute is prohibitory. In the following cases respondent's business has been specifically declared not to be a gift enterprise: State v. Shugart, 138 Ala. 86 (1903); Humes v. City of Little Rock, 138 Fed. 929 (1898); City v. Frueauff, 39 Colo. 20; Territory v. Gunst, 18 Hawaiian, 196 (1907); Long v. State, 74 Md. 565 (1891); Com. v. Emerson, 165 Mass. 146; Com. v. Sisson, 178 Mass. 578; O'Keeffe v. City, 190 Mass. 110; People v. Dycker, 72 App. Div. 308; People v. Zimmerman, 102 App. Div. 103; Winston v. Beeson, 135 N. C. 271; State v. Dalton, 22 R. I. 77 (1900); Young v. Com. 101 Va. 853 (1903). The legislature cannot prohibit respondent's business by calling it a gift enterprise.

That a "gift enterprise" is synonymous with "lottery" see State v. Bryant, 74 N. C. 207; State v. Lumsden, 89 N. C. 572.

The act violates article 1, section 7, of the constitution of Minnesota, and the fourteenth amendment of the constitution of the United States, in that it deprives respondent of liberty and property without due process of law. See People v. Gillson, 109 N. Y. 389; Schnaier v. Navarre, 182 N. Y. 83.

The act permits others to do what it prohibits respondent from doing. It is therefore discriminating class legislation and deprives respondent of "liberty."

LEWIS, J.

On the petition of the attorney general a writ of quo warranto issued from this court directing respondent to show cause by what war-

rant it claimed the right to continue the enjoyment of its corporate rights, franchises, and privileges in the state of Minnesota. Respondent demurred to the petition upon the ground that the facts stated therein did not constitute a cause of action, for the reason that chapter 142, p. 155, Laws 1909,[1] upon which the petition is based, violates article 1, § 7, of the constitution of Minnesota, and the fourteenth amendment of the constitution of the United States. That portion of chapter 142, necessary to set out in detail, reads:

"Sec. 2. Whenever two or more persons enter into any contract, arrangement or scheme, whereby for the purpose of inducing the public to purchase merchandise or other property of one of the parties to said scheme, any other party thereto, for a valuable consideration and as a part of such scheme, advertises and induces or attempts to induce the public to believe that he will give gifts, premiums or prizes to persons purchasing such merchandise or other property of such other party to said scheme, and that stamps or tickets will be given by the seller in connection with such sales entitling the purchaser of such property to receive such prizes or gifts from any other party to such scheme, the parties so undertaking and carrying out such scheme shall be deemed to be engaged in a 'gift enterprise,' unless the articles or things so promised to be given as gifts or premiums with or on account of such purchases, shall be definitely described on such stamp or ticket and the character and value of such promised prize or gift fully made known to the purchaser of such merchandise or other property at the time of the sale thereof, and unless the right of the holder of such stamp or ticket to the gift or premium so promised, becomes absolute upon the completion upon the delivery thereof without the holder being required to collect any specified number of other similar stamps or tickets and to present them for redemption together, and the right of the holder of such stamp or ticket to the prize or gift so offered is absolute, and does not depend on any chance, uncertainty or contingency whatever.

"Sec. 3. Any person who engages in a gift enterprise such as is defined in this act or who advertises the same in any manner, or

[1] R. L. Supp. 1909, §§ 5170–5 to 5170–8.

who in furtherance of such scheme, as an inducement to purchasers issues in connection with the sale of any merchandise or other property any such ticket or stamp purporting to be redeemable in some indefinite article not described thereon, only when presented with a collection of other stamps or tickets of like kind, by some other party to such scheme, and which, unless presented in the manner aforesaid is not redeemable at all, shall each and all be guilty of a misdemeanor."

According to the petition, respondent is a corporation organized and existing under and by virtue of the laws of the state of New Jersey, and, having complied with the provisions of chapter 69, p. 68, Laws 1899, is authorized to do business within the state of Minnesota. Its only business consists in the sale, issue, and redemption of what are commonly known as "trading stamps." It issues and sells its trading stamps pursuant to contracts entered into with retail merchants in the state, by the terms of which the company agrees to deliver its stamps to the merchant at a stated price, and the merchant agrees to offer these stamps to his customers as an inducement for cash trade. The stamps are redeemed by the company with merchandise only and when presented by the merchant's customers in trading stamp books containing 990 stamps. The company agrees to advertise the name and business of the merchant in its S. & H. green trading stamp books; distribute them among the people of the city, or town, where the merchant resides, and to furnish the merchant signs advertising the fact that he distributes S. & H. green trading stamps. The merchant agrees that he will not use or give away any other coupons or stamps issued by either himself or any other firm while under contract with the company. The title to the stamps remains in the company until redeemed, and the contract for their use covers the period of one year. The petition does not disclose whether the stamps are universally sold to merchants upon the same basis, but there is a provision which reads as follows:

"Unless spot cash is paid upon delivery, the subscriber agrees to pay the Sperry & Hutchinson Company fifty cents per hundred for the use of all stamps disposed of by him, making weekly settlements for the same."

110 M.—25.

From this provision we shall assume that the general price charged merchants for the use of the stamps was $5 per thousand. The petition alleges that the company has entered into a great many contracts with various merchants throughout the state; that none of the trading stamps are redeemed singly, but only in numbers of 990, when that number has been collected and pasted into the book furnished for that purpose. The petition also states that the company advertises in its trading stamp books that it will receive in exchange for stamps the wrappers, trade-marks, coupons, tags, labels, etc., collected from articles in the trade, such as coffee, condensed milk, tobacco, etc.; and that the trading stamp book also contains the statements that customers could only appreciate the variety and value of the merchandise given as premiums by visiting the company's premium parlor, where they would find practically everything, and the best of everything, required in any home. The petition states that the company never redeems any of its trading stamps in cash, or by exchanging a pen or pens therefor, although, since the act in question went into effect, respondent has caused to be printed across the face of its stamps the words: "One pen value one mill." It is also stated that respondent pursues a regular system of advertising its trading stamp books, through the newspapers, and otherwise, for the purpose of inducing the public to deal with the merchants who are under contract to furnish stamps, and that such inducement consists in the promise to redeem the same in valuable articles of household goods and other merchandise.

The legal status of trading stamp companies has been under consideration by many of the courts of this country, involving statutes varying more or less in the details and scope of the regulation. The question being new in this court, it seems advisable to review, as briefly as possible, the more important cases on the subject.

A case frequently cited as authority on the principles involved in all such cases is that of People v. Gillson, 109 N. Y. 389, 17 N. E. 343, 4 Am. St. 465. The New York statute prohibited the giving of any gift or prize in connection with the sale of any article of food, and made a person violating it guilty of a misdemeanor. Gill-

son was arrested for giving away a cup and saucer in connection with the sale of two pounds of coffee, and the court held that the statute violated the fourteenth amendment of the federal constitution. In a very able opinion, Judge Peckham defined the term "liberty," as used in the constitution, and the court held that there was no basis for legislative interference, for the reason that the act of giving away the article in connection with the purchase of any food contained none of the elements of chance or lottery, did not involve the question of public health, contained none of the elements of fraud or crime, and that the statute was an unwarranted interference with the natural right of the defendant to attract custom in the manner stated.

This case was made the basis of People v. Dycker, 72 App. Div. 308, 76 N. Y. Supp. 111, wherein the supreme court of New York had under consideration a trading stamp law which prohibited the issuing and distribution of trading stamps, or other devices, in connection with the sale of goods and merchandise to be redeemed by a third party, expressly exempting manufacturers and merchants from the provisions of the act, and permitting them to issue and redeem their own coupons and tickets. On the authority of People v. Gillson, and other cases, the court held the act to be unconstitutional, for the reason that there appeared to be no distinction between the business or method of issuing and redeeming such tickets or coupons by a manufacturer or merchant, as in the Gillson case, and the method of issuing and redeeming trading stamps by a third party; that is, that the elements of lottery and public welfare were not involved in the transaction, so as to form the basis of legislative interference.

After that decision the legislature of New York amended the law, making it applicable to the issue and redemption of stamps by third parties only, and providing that each stamp should have legibly written upon its face the redeemable value thereof in money, and that such stamps should be redeemed when presented in a quantity aggregating in money value not less than five cents each lot, and that upon failure to redeem the party issuing such stamps should be liable for the face value thereof. The court held the law unconstitutional upon the authority of the Gillson case, and declared that no moral or lottery question was involved, and also held that the law was invalid,

because the business of dealing in trading stamps was reserved for merchants and manufacturers, which created a preferential class. In this respect the court said: "The vice, it seems, is not in allowing one to buy by promise of a gift, but in permitting the promise to be fulfilled by another than the seller. It is a narrow ledge for the distinction to rest upon, when in one instance the transaction is subject to legislative control to the extent of confiscation, and in the other it goes without let or hindrance.

Another leading case on the subject is that of State v. Dalton, 22 R. I. 77, 46 Atl. 234, 48 L.R.A. 775, 84 Am. St. 818, decided in 1900. The act of the legislature prohibited the issuing and redemption by a third party of coupons, or stamps, in redemption of articles issued by a merchant connected with the sale of merchandise, and a merchant was arrested for dealing with a trading stamp company. The company involved in that case was respondent, and the contract was similar to the one involved in the case now under consideration. The court upheld the contention that the law deprived the merchant of his liberty and property without due process of law, and that the prohibited act did not in any manner concern the public health, public safety, or welfare, and did not contain any of the elements of lottery or chance. The court remarked that the scheme was simply one of a variety of devices resorted to by tradespeople in these days of sharp competition to promote the sale of their goods. Notwithstanding its decision, however, the court took occasion to define its position on the trading stamp business in the following language: "In order that we may not be misunderstood in the position which we feel compelled to take regarding the case before us, we deem it proper to say that we do not approve of the trading stamp business, as some of the cases above referred to inform us it is conducted, although there is no evidence before us concerning it, nor do we decide that it is not competent for the general assembly to prohibit it. What we do decide is that the statute in question is so broad as to interfere with the right of an individual to deal with his own property in his own way; that is to say, to make such contracts regarding the sale and disposition thereof as he shall see fit, so long as he observes the rule that each one shall

so use and enjoy his own property as not to injure that of another person, and also the further rule that his use of it shall not be injurious to the community." The court thus intimated that it would be within the power of the legislature to regulate, or prohibit entirely, the trading stamp business, but left us in the dark as to what it considered such abuses as would justify the legislature to interfere, within the doctrine of the police power.

There are other decisions to the same effect under similar statutes, among which may be mentioned State v. Dodge, 76 Vt. 197, 56 Atl. 983.

Another case often referred to is Young v. Com., 101 Va. 853, 45 S. E. 327, decided in 1903. The respondent was the trading stamp company in that case, and the contract was similar. As in New York, the law was directed to the issuing and redeeming of trading stamps by third parties, and expressly exempted merchants and manufacturers from its operation. The court reviewed many of the authorities, including People v. Gillson and State v. Dalton, and reached the conclusion that the transaction was free from any element of gambling or lottery, did not affect the public welfare, safety, health, or morals, and that there was no foundation for legislative interference under the doctrine of police power.

There is another line of cases, notably that of State v. Shugart, 138 Ala. 86, 35 South. 28, 100 Am. St. 17, where the statute simply prohibited lottery or gaming devices, and made no reference to the trading stamp business. Under such statutes it has universally been held that the scheme of issuing and redeeming trading stamps was not a lottery or gambling device; hence those decisions have no particular value here.

The supreme court of California in 1905 had the subject under consideration in Ex parte Drexel, 147 Cal. 763, 82 Pac. 429, 2 L.R.A.(N.S.) 588. There the statute was sweeping, and prohibited the issuing and redemption of trading stamps, not only by other parties, but also by merchants themselves. The act was held unconstitutional in all respects. The court adopted the reasoning of People v. Gillson and the other New York cases above cited, State v. Dalton, State v. Shugart, Young v. Com., supra, and others, and referred

to Lansburgh v. District of Columbia, 11 App. Cas. (D. C.) 512, Humes v. City of Ft. Smith (C. C.) 93 Fed. 857, and State v. Hawkins, 95 Md. 133, 146, 51 Atl. 850, 93 Am. St. 328, as follows: "With respect to these cases, we do not deem it necessary to consider the suggestion of petitioners that they are distinguishable from the mass of cases above cited. Whatever they may hold, they are not of sufficient consequence to ruffle the great current of authority which runs the other way."

The Massachusetts supreme court decided, in Com. v. Emerson, 165 Mass. 146, 42 N. E. 559, that an act preventing the sale or exchange of property under the inducement that a gift, or prize, was to be part of the transaction, had no application, and did not forbid a sale of two things at once by a merchant, even if one of them was the principal object of desire, and the other an additional inducement which turns the scale. After that decision was rendered, the legislature amended the act to provide that no person should sell, exchange, or dispose of any property, or offer, or attempt to do so, upon any representation, advertisement, notice, or inducement concerning any other property than that which was specifically stated to be the subject of the sale or exchange. In Com. v. Sisson, 178 Mass. 578, 60 N. E. 385 (1901), the same court held that the delivery of trading stamps with articles sold for cash, redeemable at the store of an independent corporation, issuing the stamps, was not a violation of the act, for the reason that it did not contain any of the elements of gambling or lottery. In O'Keeffe v. City of Somerville, 190 Mass. 110, 76 N. E. 457, 112 Am. St. 316, it was held that an act was unconstitutional which attempted to impose an excise tax on the business of selling or giving trading stamps, or similar devices, by a merchant, in connection with the sale of articles.

The leading case which presents a different view of the subject is Lansburgh v. District of Columbia, 11 App. Cas. (D. C.) 512, decided in 1897. The act of Congress was a sweeping prohibition against the issuing of any ticket, stamp, or coupon, by a vendor, or by any other person or party under contract with the vendor, redeemable in any merchandise which was not identified or selected by the purchas-

er at or prior to the time of the purchase. The court stated its position as follows: "Without the necessity of declaring that the acts proved in this case constitute the conduct of a lottery or gift enterprise, as those words are commonly understood, or even of finding that the element of chance operates intentionally and distinctively in the scheme of the trading stamp company, we think, nevertheless, that they come within the prohibition of the statute which, as before said, furnishes its own definition of gift enterprise."

This decision is based on the fact that trading stamp companies are not dealers or ordinary merchants engaged in the legitimate attempt to obtain purchasers for their goods by offering fair and lawful inducements to encourage trade, but are organized for the purpose of intervening between the merchant and his customers, and the position they occupy enables them to force their stamps on unwilling merchants by use of the argument that they thereby secure an advantage over other merchants who are not taken into the scheme. The court also expressed the opinion that the premiums were grossly overvalued, and that the corporation maintained itself upon the vast difference between the cost of carrying on the business and the amount received by the merchant. Or, if there was any substantial value in the premiums, as compared with the amount of the tickets for redemption, then the profit, or part, at least, was secured by reason of the fact that many of the merchant's customers failed to redeem their tickets, or stamps, because unable to complete the book. The court took occasion to express in vigorous language that the whole scheme was a cunning device, created for the purpose of taking advantage of the weakness of human nature.

The federal circuit court for the Western District of Arkansas in the case of Humes v. City of Fort Smith, 93 Fed. 857, sustained an act of the Arkansas legislature regulating gift enterprises by imposing a license tax not exceeding $1,000 per year upon any person, firm, or corporation engaged in such enterprise. The act defined gift enterprises to include premium stamps, trading stamps, and similar schemes and devices, by means of which merchants, manufacturers, and other persons engaged in lawful callings are advertised, exploited, and patronized to the exclusion of others on like terms.

The court followed the Lansburgh case, and held that the issuing of stamps for the purpose of redemption in merchandise might fairly be deemed against public policy, detrimental to the public welfare, and under the police power the legislature might exercise its discretion in regulating or prohibiting it.

The supreme court of Washington in Fleetwood v. Read, 21 Wash. 547, 58 Pac. 665, 47 L.R.A. 205, decided in 1899, upheld an ordinance of the city of Tacoma which imposed a license tax upon all business houses which employed trading stamps for the sale of goods under a statute which authorized cities of the first class to grant licenses for any lawful purposes. In a later case, however (Leonard v. Bassindale, 66 Wash. 801, 89 Pac. 879, 65 Cent. Law J. 303), decided in 1907, the court declared an act passed in 1905 unconstitutional which made it a misdemeanor to issue and redeem trading stamps in connection with mercantile transactions. In the opinion the court state that the cases of Lansburgh v. District of Columbia and Humes v. City of Fort Smith did not seem to have been able to withstand the overwhelming trend of opinion to the opposite view, and that the court felt impelled to follow the great weight of authority, and held the statute was in violation of the state constitution, which provided that no person should be deprived of life, liberty, or property without due process of law.

In 1891 the statute of Maryland contained a sweeping prohibition against the use of any form of gift enterprise as an inducement for the sale of all kinds of merchandise, and the supreme court of that state held, in Long v. State, 74 Md. 565, 22 Atl. 4, 12 L.R.A. 425, 28 Am. St. 268, that the statute was invalid in so far as it related to gift enterprises not involving any element of chance. The statute was then amended so as to prohibit the issuing of stamps, tickets, etc., in connection with the sale of merchandise, the same to be redeemed by some person or association of persons other than those making the sale, the holder receiving in exchange therefor any gift, prize, or gratuity, or anything uncertain, undetermined, or unknown to the purchaser of the goods at the time of the purchase thereof. This statute came before the supreme court for consideration in the case of State v. Hawkins, 95 Md. 133, 51 Atl. 850, 93 Am. St. 328,

and it was upheld as a constitutional exercise of the police power. The court held, however, that the fact that the stamps were redeemed by another party than the merchant, or that they were to be redeemed at a place other than where the sale was made, did not introduce any element of chance.

From this review of the cases we think it manifest that the apparent differences in judicial expression may be generally accounted for by the differences in the statutory provisions under consideration. In some states the statute prohibited the issuing of stamps or tokens which enabled either the merchant, or a third party, to redeem the same in merchandise. In other states the legislation was directed merely to the issuing and redemption of such stamps or coupons by third parties, making no attempt to regulate the business as conducted by merchants. In yet other states the statute involved was a general prohibition against engaging in lottery, chance or gaming operations.

Although there is some conflict in the decisions, a few principles are recognized as the settled law upon this subject. It is beyond the province of the legislature to prohibit a merchant from issuing coupons, tickets, stamps, or tokens representing a certain value, which entitle the holder to a redemption of the same in merchandise. In pursuance of this scheme of advertising to excite the interest of his customers, the merchant is not required to redeem these tickets or coupons singly. They may be issued in any amount, and redemption may be made to depend upon their being presented collectively. No feature of lottery is involved from the fact that the articles were not exposed and examined by the purchaser at the time the coupons were issued to him. There is no tangible difference between the selection of an article at the time of receiving the coupons and the selection thereof at a subsequent time, when coupons representing a certain sum shall have been collected. There is no distinction between making the selection of a premium from merchandise on exhibition at the store, or from a catalogue furnished by the merchant. The fact that the particular article desired by the purchaser is not de-

.scribed in the coupon or ticket does not invest the transaction with the element of chance, uncertainty, or hazard. These and similar methods of advertising by merchants have been followed so long, and have become so thoroughly recognized as the legitimate exercise of personal rights and privileges under the constitution, that they are no longer the subject of legislation.

If we shall find that there are no different elements of chance and uncertainty, or no greater tendency to fraud as the business of issuing and redeeming stamps is conducted by respondent, than attends their issue and redemption by the merchant making sales of merchandise, then we know of no legal ground for sustaining the writ. The main differences in the method' of transacting the business are as follows: A variety of merchandise is kept on exhibit at the company's store in the village or city where the merchant does business, and the customer may make a selection from such articles as are designated for the redemption of one or more stamp books, as the case may be. The customer may not know, at the time he receives the stamps from the merchant, what particular article he will select; but he has the opportunity to examine the stock at the company's store, and may make his collection of stamps with reference to some particular article.

We recognize the fact that legislative regulation is not necessarily dependent upon whether the business, as conducted by respondent, affects the public health, or is attended with the features of a lottery. It has long been settled that any business, although legitimate in itself, is subject to regulation by the police power, whenever so conducted that it may fairly be said that it affects the public interest or welfare. Public interest may be affected when a business is conducted on such a scale and under such conditions as to lead to an abuse of the confidence of those who have occasion to transact business in that line. The rates of interest, insurance business, the regulation of grain elevators and warehouses, hawking and peddling, bakeries, butcher shops, etc., have been recognized as proper subjects for police regulation, not because of anything naturally wrong in these vocations, but because, from the character of the business, opportunities are present for deception on account of the difficulty the

customer has to obtain knowledge of the character of the contract or the merchandise. So with reference to certain lines connected with the handling of agricultural products.

Where the producer is located at a distance from the commission house, the law may properly regulate the conditions upon which commission and brokerage houses shall do business with the public. This is illustrated by the cases of State v. Wagener, 77 Minn. 483, 80 N. W. 633, 778, 1134, 46 L.R.A. 442, 77 Am. St. 681, and Knoxville Iron Co. v. Harbison, 183 U. S. 13, 22 Sup. Ct. 1, 46 L. Ed. 55. In the latter case an act of the legislature of Tennessee was upheld which required the redemption in cash of store orders or other evidences of indebtedness issued to employees in payment of wages.

If, in dealing with the merchant and his customers there is an opportunity to take advantage of them by a persistent system of attractive advertising and other inducements, then reasonable safeguards and limitations may be provided to prevent such abuses. But the difficulty with the present law is that it is not designed to regulate a legitimate business. It condemns the business conducted by respondents as illegitimate, because the public is induced to engage in lottery transactions, and places such restrictions about the issue and redemption of stamps as to make that business impossible. In State v. Hawkins, supra, the Maryland statute was held valid in so far as it was directed to prevent the holder of stamps from receiving in exchange therefor anything uncertain, undetermined, or unknown to the purchaser of the goods at the time of the purchase. But this law does not stop at that point. It requires that each stamp or ticket shall have described thereon the character and value of the gift which redeems it, or that such fact shall be made known to the customer at the time of the purchase. Each separate stamp must be treated independently, and redemption collectively is prohibited. It is apparent that it would not be practicable to redeem stamps of the value of one mill, or one cent, nor to print on each stamp the character of the article offered for its redemption. To make such a provision practicable would require each stamp to be issued in denominations to correspond with each purchase. Most cash purchases

are in small amounts, and the restrictions imposed by chapter 142 necessarily limit the articles offered for redemption to those of practically no value.

Our attention is called to the language of the court in the Lansburgh case, by which the business of issuing and redeeming trading stamps is condemned as a cunning device which confers no benefit on anybody, and that merchants are persuaded to invest in stamps, partly in the hope of obtaining the customers of other merchants, and partly through fear of losing their own. We assume that the court was referring to the practice of selling the stamps to one merchant only in the same line of business, thus attempting to give him an advantage over his competitors. Why this exclusive right to deal in stamps by the merchant who enters into a contract with the company should be considered as detrimental to his or to the public interest we are unable to understand, unless the practice is attended with some tendency to deceive. Many merchants prefer to conduct such schemes of advertising by issuing and redeeming their own coupons. Others prefer to place the entire matter in the hands of a third party, and be relieved of the trouble and responsibility. But so far as the petition informs us the merchants in this state have not been induced to enter into the contracts by reason of deceptive representations. Such contracts are made for the period of one year, and there is no compulsion about renewing them. The stamps cost the merchants at the rate of half a cent each, or five cents for ten stamps. He gives his cash customers, if they call for them, ten stamps for every dollar's worth of merchandise purchased. The effect is that the merchant receives ninety-five cents for every dollar's worth of goods sold for cash. The object, no doubt, is to secure additional customers, if possible, and build up his trade, and to induce payment in cash for the purpose of getting the money to use. Merchants who enter into contracts with respondent company agree to make this discount, and presumably they so obligate themselves because they consider it a paying investment.

The profit in respondent's business is the difference between the amount received from the merchant for the stamps and the cost of the articles offered in redemption, less the cost of running the busi-

ness. The profits may be large; but that alone does not furnish ground for the prohibition of the business. No doubt some stamps are lost, some books are not filled out, and hence never presented for redemption. To that extent the company is the gainer. The same advantage exists when the scheme is conducted by the merchant; but, even if there is a distinction in this feature between the merchant and the company, it has not been made to appear from the petition that the collectors of stamps pay any additional value for them. They are at liberty to take them, if they so desire; but we discover no element of deception or compulsion. Without deciding that a business of this character may not be conducted in such manner and on such a scale as to make it subject to regulation or prohibition, because of this so-called tontine feature of uncertainty of redemption of stamps, we find no basis for the application of this principle in the present case.

Our conclusion is that, in so far as chapter 142, Laws 1909, prohibits companies or parties from issuing and redeeming trading stamps under contracts which in practice depend on chance, uncertainty, or contingency, the law is a proper exercise of the police power; that the business of issuing and redeeming trading stamps, as conducted by respondents, is not attended with such elements of chance, uncertainty, and contingency as to come within that provision of the act; that the provisions requiring each stamp to be valued and redeemed independently of other stamps, and to have printed thereon its value and character of the article offered for redemption, constitute unnecessary restrictions amounting to practical prohibition of the business as conducted by respondents, and are not a proper exercise of the police power of regulation.

Writ discharged.

O'BRIEN, J., took no part.

JAGGARD, J. (dissenting).

I respectfully dissent. The presumption in favor of the constitutionality of legislative action is strong. A statute should not be avoided, unless clearly necessary. The authorities do not impress me as compelling the decision that the law here in issue is unconsti-

tutional, although not all of them can be so substantially distinguished as to show that they do not hold .it invalid.

Moreover, I am unable to perceive why the statute should not be upheld, because it excludes an illegitimate business. In effect it regards the defendant as a commercial parasite and prohibits existence. The facts justify that definition and prohibition.